# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA
## IN ANCHORAGE

THE UNITED STATES OF AMERICA

ex. rel. Arlene Cohen, Relator,

        Plaintiff,

v.                      Case No.: _____

CITY OF PALMER, ALASKA

A Political Subdivision of the State of Alaska,

        Defendant.

## COMPLAINT

The plaintiff, through counsel, states the following in support of the Complaint.

1. This suit is filed under seal on behalf of the United States of America by whistleblower Relator Arlene Cohen of Palmer, Alaska, pursuant to the Federal False Claims Act, which provides for citizen enforcement of federal contracting fraud liability. 31 U.S.C. Sections 3729 – 3733, 28 USC 652(d) Jurisdiction and venue are proper in this Court because the suit invokes the business of the United States government and the alleged events took place largely in the State of Alaska. 28 U.S.C. Sections 133, 1343.

2. The City of Palmer, Alaska (hereafter Palmer), is a political subdivision of the State of Alaska. Localities, like Palmer, do not enjoy immunity under the Federal False

1

Claims Act. A city is a "person" with potential liability under the Act. *Cook County v. United States ex rel. Chandler*, 538 U.S. 119 (2003)

3.  This suit alleges Palmer misused funds granted by the United States in violation of its contract responsibilities under the federal grants. In particular it is alleged that Palmer failed to place the vast majority of its public works construction projects out for competitive bids by the private sector, instead paying Palmer's existing public works force at a sharply enhanced pay rate to largely perform the federally-financed projects, practices that are directly prohibited when spending federal grant funds, all done without consultation with the United States of any form. ARRA, Section 1554 [1], 23 CFR 204(c), 23 CFR 635.205(b), Dept. of Labor Wage and Hour Division, Office of Enforcement Policy, ARRA Directive of 6/1/09 (Attachment 1). It is further alleged herein the federal grant funds were also purposely used by Palmer to purchase materials for future Palmer public works projects unconnected to the two projects funded by the federal grants.

4.  The Relator has been gathering information and notifying federal authorities concerning the financial abuses set out in this Complaint since January, 2010. Her extensive efforts have become the direct cause of an Environmental Protection Agency (EPA) probe of the two American Recovery and Reinvestment Act (ARRA) grants awarded to Palmer in 2009 for replacement of the city water main and for major improvements to the wastewater facility. (EPA Grant Awards, 11/27/09 and 12/22/09,

---

[1] Section 1554 - Special Contracting Provisions
To the maximum extent possible, contracts funded under this Act shall be awarded as fixed-price contracts through the use of competitive procedures. A summary of any contract awarded with such funds that is not fixed-price and not awarded using competitive procedures shall be posted in a special section of the website established in section 1526.

2

Attachments 2 and 3) The EPA agency investigation is centered on excessive force account wages, nepotism, wasteful spending on materials and false accounting under ARRA. The Relator's efforts have led to discovery that the Palmer public works storage yard and warehouse contains today valuable pipe, tubing, equipment and materials purchased with ARRA funds that should never have been bought in the first place.

5. The water main construction project selected by Palmer for grant funds happened to be the very work the Palmer public works force was scheduled to perform to near completion beginning that very year. The wastewater treatment facility was also high on Palmer's public infrastructure plan. The two EPA grants each called for $2,500,000 in federal spending.

6. The ARRA was passed in February, 2009 as Congress' response to the Great Recession and its rocketing nationwide unemployment. Federal funds were made specially available for worthy public works construction projects under the largest program of the legislation. Virtually all of the construction awards under ARRA were to be directed at creating as many new jobs and as much private sector activity as the money allows for. Other legislation in the overall package offered $54b of subsidies to cash-strapped states and localities to keep public employees like police officers and teachers and utility workers on the job. Those ARRA state and local government subsidy programs are unrelated to the federal grants to Palmer at issue in this suit. The finances of Palmer in 2009 were not in significant distress. No public employees were being laid off by Palmer in 2009 due to financial distress with no such plans on the table.

3

Palmer grant projects. CIRCULAR A-102 (REVISED 10/7/94, As Further Amended 8/29/97)

c. Paragraph 16 of the wastewater treatment facility, Attachment 3, grant required compliance with Executive Order 13202, as amended: "Preservation of Open Competition" 2/22/01, 65 Fed. Reg. 11225, amended 4/6/01)

d. Further, the secretive way Palmer avoided competitive bidding was in conflict with federal regulations for the use of force-account labor on federally funded projects in general.

e. Palmer had every intention of violating its grant agreement from the outset, before any documents were signed.

9. Localities were required under ARRA to sign a guaranty back to the federal agency or department awarding the grant certifying that "Grant Funds will be used to create jobs and promote economic activity", including Palmer on September 25, 2009 with identical signed forms. (Attachment 8)

10. In fact, no jobs are known to have been created or saved in Palmer with the ARRA grant funds from the EPA. Palmer excused itself from paying most of its public works payroll instead of creating private sector jobs as intended under ARRA.

11. There are a number of qualified companies in South-Central Alaska that could have completed either Palmer public works project and, if successful with their bid, would have created new private-sector jobs as ARRA intended. (Attachment 9)

5

12. Nothing in the ARRA grant applications to the EPA stated or implied anything about using grant money to pay the Palmer public works payroll for a year, to reward city public works employees with a 40% pay increase for six months in violation of federal regulations, to purchase materials and equipment well beyond the needs of the grant funded projects or that the two construction projects funded would not be placed up for competitive bidding nor even considered for such bidding. All of these events occurred nonetheless in the use of the federal grant funds by Palmer. Each of these events violated Palmer's contract obligations to the EPA.

13. When billing force account work to ARRA projects, irregular, large pay increases to city employees are never allowed. Force account work, such as the two EPA projects in Palmer, does not pay so-called Davis-Bacon union wages. Such wages have never been formally allowed for city employees in any context of federal contracting at any time.

14. Even after Palmer was directly informed by the EPA legal office and the State of Alaska that local government workers are never allowed Davis-Bacon wages in federal contracting, defendant Palmer persisted in the pay bonus scheme from July, 2009 until November, 2009.

15. The following false representations were made by Palmer in obtaining the two EPA grants:

a. To arrange for competitive private-sector bidding for the construction projects under the two grants.

6

b.   To post any deviation from this bidding requirement on the Recovery.com web site after obtaining appropriate approval for force-account labor instead of using private contractors.

c.   To obtain approval from the EPA in some valid form to allow for force-account labor as a substitute for competitive bidding.

d.   To only buy the construction materials and equipment needed to complete the two projects.

e.   To pay local government salaries no more than their usual rate when performing contracting work under federal grants and loans.

f.   To report back to the EPA all deviations from the contract obligations of Palmer in administering the grant funds.

g.   To create and save as many jobs as the grant money allows for.


16.   Palmer knowingly violated those obligations it assumed in the following ways.

a.   Competitive bidding for by far most of the labor work under the two ARRA construction contracts was never even begun. Palmer decided on its own without proper authority to direct almost all of the labor costs of the two projects to city coffers instead.

b.   Did not post any notice on Recovery.com that competitive bids were largely being dispensed with.

c.   No approval for force-account labor instead of competitive bidding was sought or given by the EPA.

7

d. Approximately $127,000 of steel pipe, copper tubing, gate valves, bends and other material was ordered and paid for under ARRA grants, all beyond the needs of the two construction projects at issue and obviously so at the time of the materials order.

e. Public works employees were suddenly given a 40% salary raise for no reason beyond the fact the federal government was paying. Extensive overtime work was also paid to public works employees with ARRA funds at the enhanced pay rate, all of the way up to the department head.

f. Across thirteen reports under ARRA, the EPA was never informed by Palmer of any of the unlawful, unauthorized practices engaged in by the city. All of the misspent funds were lumped into the largest reporting category one can imagine for such a project, "construction costs". Palmer has yet to mention to federal authorities the excess materials still stored in its warehouse.

g. Not a single effort was made to create or preserve any job with no such effort ever contemplated.

Each of these instances constituted the submission of a false, fraudulent claim in the pursuit of EPA grant funds. Had any of these false claims not been made Palmer likely would have had its grant funds denied or greatly reduced.

17. The price paid for the excess equipment and materials presently in the Palmer warehouse and storage yard, purchased with EPA grant funds, was approximately $127,000.

18. Palmer is in the best position to salvage value from the wasted expenditure, not the EPA. It is Palmer's obligation to correct any errors made in purchasing materials by

8

informing and reimbursing the United States. No such effort has been made to date by Palmer.

19. Palmer wrongfully expended the total sum of approximately $847,900 in unauthorized force account work under the EPA ARRA grant for the city water main replacement. Of that sum, a total of approximately $229,000 represented special pay increases to city workers under the fiction of the Davis-Bacon Act requirements.

20. Palmer wrongfully expended the sum of $418,500 in no-bid, force account work under the ARRA grant for the city waste water treatment facility.

21. Palmer violated the Federal False Claims in no less than twenty-four instances as detailed above.

22. Pursuant to provisions of the Federal False Claims Act this suit was required to be filed under seal and not to be served on the defendants for a period of no less than sixty (60) days while the case is further reviewed by the United States.

23. Trial by jury is requested by the United States/Relator.

THERFORE, the plaintiff moves this honorable Court for entry of judgment in favor of the plaintiff United States against the defendant City of Palmer, under the False Claims Act, thereby awarding the sum of One Million Four Hundred Thousand Dollars ($1,400,000) in compensatory damages for misspent grant funds, such sum to be trebled to the sum of Four Million Two Hundred Thousand Dollars ($4,200,000) under the Act's provisions, for the award of Two Hundred Forty Thousand ($240,000) in fines and, further, for the award of attorney's fees, litigation expenses, costs, and accrued

interest as allowed by the Federal False Claims Act and federal practice. The Relator further moves for an adjudication of the relator's share in the prospective award.

_____
Stephen Merrill, Attorney
Counsel for the Plaintiff/Relator

Stephen Merrill, Attorney
Alaska State Bar # 0911058
Boardwalk Office Suites
201 Barrow Street, Suite 102c
Anchorage, Alaska 99501
Tel. 907-771-9900
Fax 907-771-9998
AttorneyMerrill@AnchorageLawyer.US

## CERTIFICATE OF SERVICE

Plaintiff Relator's counsel certifies this 6th day of October, 2011 a true copy of this Complaint and the required Relator's Disclosure will be served on the following persons, but not served on defendant City of Palmer, Alaska, all as provided by the Federal False Claims Act.

Eric Holder, Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Karen Roeffler, United States Attorney
for the District of Alaska
222 West 7th Avenue, Room 253
Anchorage, Alaska 99513

_____
Stephen Merrill, Attorney
Counsel for the Plaintiff/Relator

10