# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

THE UNITED STATES OF AMERICA, ex rel. ARLENE COHEN, Relator,

                        Plaintiff,

      v.

CITY OF PALMER, ALASKA, a Political Subdivision of the State of Alaska,

                     Defendant.

Case No. 3:11-cv-00199-SLG

## ORDER GRANTING MOTION TO DISMISS

Before the Court at Docket 26 is a Motion to Dismiss filed by Defendant City of Palmer. The motion has been fully briefed and oral argument was held in Anchorage on May 13, 2013. For the reasons explained below, the motion will be granted, with partial leave to amend.

### FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, was enacted in 1863 to protect the federal government from false claims submitted by government contractors. The FCA authorizes a *qui tam* civil action, in which a private individual (known as a "relator") may bring suit on behalf of the government and share in any proceeds that result from the action.

Arlene Cohen brought this action as Relator on behalf of the United States against the City of Palmer, Alaska. The First Amended Complaint alleges that

beginning in 2009 and continuing through 2011, Palmer violated the FCA in its use of federal grant funds for public works construction projects.[1]

The First Amended Complaint makes the following factual allegations:

In February 2009, Congress passed the American Recovery and Reinvestment Act ("ARRA") to aid the country's recovery from the recession.[2]  ARRA made federal grant funds available for public works construction programs, intended to help stimulate private sector activity.  A separate portion of ARRA created subsidies for state and local governments to help stabilize public employment.

The Environmental Protection Agency ("EPA") solicited public works construction project proposals from the fifty states, which, in turn, solicited project proposals from localities.  Through this process, Palmer applied for and obtained two ARRA grants from the EPA intended to stimulate the private sector, administered by the Alaska Department of Environmental Conservation ("ADEC").  One grant was for a water main replacement project, applied for on August 3, 2009; the other was for a wastewater treatment facility, applied for on June 2, 2009.[3]  The First Amended Complaint does not allege when these projects commenced, when the projects were completed, or any other specific details of these projects.  It also makes no allegations regarding how or

---

[1] Docket 23 at 10 ¶ 25, 7 ¶ 16.

[2] American Recovery and Reinvestment Act of 2009, PL 111-5, Feb. 17, 2009, 123 Stat 115 [hereinafter ARRA].

[3] Docket 1-4 (water main grant application); Docket 1-5 (wastewater grant application).  The Amended Complaint identifies attachment 2 to the original Complaint as "[t]he EPA grant award for the water main replacement," and attachment 3 as "the wastewater treatment facility grant," but those documents appears to be broader agreements between the EPA and ADEC to implement statewide projects, not agreements between the EPA or ADEC and Palmer to complete the Palmer projects, and the Amended Complaint does not allege that Palmer received or was a party to either document.  Docket 1-2, 1-3 (purported grant agreements).

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 2 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 2 of 26

when the ARRA grant funds were received, or the process Palmer followed in submitting its claims for payment.

The First Amended Complaint asserts that Palmer violated the FCA through its administration of these grant funds "in no less than twenty-four instances."[4]  These instances can be grouped into four distinct claims, as explained below.[5]

(1) Bid-Rigging.

The First Amended Complaint alleges that "[o]ne of the standard conditions accepted by Palmer in its applications for the grant funds required a competitive bidding process for construction contracts."[6]  However, it alleges, "Palmer decided on its own without proper authority to direct almost all of the labor costs of the two projects to city coffers" by using its own employees, instead of submitting the projects to contractors for competitive bidding.[7]

_____

[4] Docket 23 at 10.

[5] The First Amended Complaint also alleges that "[a]fter the Davis-Bacon wages ruse was dropped by Palmer the city persisted in 2010 and 2011 under the Waste Water Management project to bill EPA ARRA funds for excessive employee benefits," including "very generous health insurance coverage, high retirement contributions[,] and an imaginary charge for employee vacation leave."  Docket 23 at 7 ¶¶ 16-17.  Palmer maintains that the First Amended Complaint does not plead this claim with particularity, as it does not "cite to any law, regulation, or requirement that prohibits Palmer from providing its employees 'generous health insurance' and 'high retirement contributions.'"  Docket 27 at 27.  (Palmer also points out that the amount of Palmer's contributions to employee retirement accounts are determined by statute.  Docket 27 at 27-28 (citing AS § 39.35.255 et seq.))  In her opposition, Ms. Cohen does not respond to this argument or otherwise address this claim.  Accordingly, the Court deems it to have been abandoned.  *See* Local Civil Rule 7.1(e) (failure to submit proper materials in support of opposition to motion may be deemed an admission that the motion is well taken); *cf. Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (plaintiff abandoned claims by not raising them in opposition to summary judgment motion) (quoting *Jenkins v. Cty. of Riverside,* 398 F.3d 1093, 1095 n. 4 (9th Cir.2005)).

[6] Docket 23 at 5 ¶ 9(a).

[7] Docket 23 at 9 ¶ 20(a).

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 3 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 3 of 26

*(2) Excessive Employee Compensation.*

The First Amended Complaint also alleges that Palmer paid its public works employees "so-called Davis-Bacon union wages."[8] It alleges that "[e]ven after Palmer was directly informed by the EPA legal office and the State of Alaska that local government workers are never allowed Davis-Bacon wages in federal contracting, defendant Palmer persisted in the pay bonus scheme from July, 2009 until December, 2009" and "enhanced wages for the Palmer public works force were also paid for several months prior to that time by the EPA ARRA funds."[9]

*(3) Stockpiling.*

The First Amended Complaint also alleges that Palmer purchased $127,000 in excess building materials ("steel pipe, copper tubing, gate valves, bends and other material") using ARRA grant funds, "all beyond the needs of the two construction projects at issue and obviously so at the time of the materials order."[10] Although the dates of this alleged conduct are imprecise, it appears that it took place in spring 2010 but was not investigated by Ms. Cohen until spring 2011.[11]

*(4) Failure to Create Jobs.*

The First Amended Complaint alleges that in two forms submitted on September 25, 2009, Palmer guaranteed that it would use the ARRA grant funds to "create jobs

---

[8] Docket 23 at 7 ¶¶ 14-15.

[9] Docket 23 at 7 ¶ 15.

[10] Docket 23 at 9 ¶ 20(d).

[11] *See* Docket 28-3 at 14 (Cohen Aff.) (allegedly excess materials were obtained for spring 2010 projects; Ms. Cohen did not begin investigation until spring 2011).

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 4 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 4 of 26

and promote economic activity."[12]  However, "no jobs are known to have been created or saved in Palmer with the ARRA grant funds from the EPA."[13]  The First Amended Complaint alleges that "[t]here are a number of qualified companies in South-Central Alaska that could have completed either Palmer public works project and, if successful with their bid, would have created new private-sector jobs as ARRA intended."[14]

In January 2010, Ms. Cohen alleges that she began gathering information and notifying federal authorities regarding the alleged financial abuses identified in the First Amended Complaint.[15]  Ms. Cohen filed the Complaint in this action on October 7, 2011.  On August 27, 2012, the United States declined to intervene.  Ms. Cohen filed a First Amended Complaint on November 9, 2012 and on February 7, 2013, Palmer filed the present Motion to Dismiss.  The motion seeks dismissal of the First Amended Complaint on three grounds: (1) lack of subject matter jurisdiction under Rule 12(b)(1); (2) failure to state a claim under Rule 12(b)(6); and (3) failure to plead fraud with specificity under Rule (9)(b).

---

[12] Docket 23 at 6 ¶ 10.

[13] Docket 23 at 6 ¶ 11.

[14] Docket 23 at 6 ¶ 12.

[15] Docket 23 at 3 ¶ 4.  The First Amended Complaint alleges that Ms. Cohen's efforts have led to an EPA agency investigation.  Docket 23 at 3 ¶ 4.

**DISCUSSION**

**I.    Applicable Law.**

When faced with a challenge to its subject matter jurisdiction, a court must resolve that issue before determining whether a complaint states a cause of action.[16] Palmer's jurisdictional arguments under Rule 12(b)(1) are premised on the public disclosure rule, which is codified at 31 U.S.C. § 3730(e)(4).   On March 23, 2010, Congress amended § 3730.[17]    The prior version of the statute explicitly stated that public disclosure deprived a court of subject matter jurisdiction and extensive pre-2010 case law discussed the jurisdictional test to be applied when evaluating an alleged public disclosure.[18]    However, in the 2010 amendments, Congress changed the language of § 3730(e)(4) from a jurisdictional statement ("No court shall have jurisdiction") to an instruction for dismissal ("The court shall dismiss") of an action if it is based upon publicly disclosed information.    In addition, Congress left intact the jurisdictional language of two other provisions in § 3730.[19]   The change to § 3730(e)(4) is a clear indication that Congress intended to render the public disclosure requirement

---

[16] *See Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83, 93-94 (1998).

[17] Patient Protection and Affordable Care Act, PL 111-148, Mar. 23, 2010, 124 Stat 119.  As the enacting legislation did not specify an effective date, the amendments took effect on the date of their enactment.  *Johnson v. U.S.*, 529 U.S. 694, 702 (2000) (applying "the general rule that when a statute has no effective date, 'absent a clear direction by Congress to the contrary, [it] takes effect on the date of its enactment.'") (citations omitted).

[18] 31 U.S.C. § 3730(e)(4) (pre-2010) ("No court shall have jurisdiction over an action under this section . . ."); *Graham Cnty. Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 285 (2010) ("The statute contains three categories of jurisdiction-stripping disclosures.").

[19] *Compare* 31 U.S.C. § 3730(e)(4)(A) ("The court shall dismiss an action or claim under this section, unless opposed by the Government . . .") *with* 31 U.S.C. § 3730(e)(1) ("No court shall have jurisdiction over an action . . .") *and* 31 U.S.C. § 3730(e)(2)(A) ("No court shall have jurisdiction over an action . . .").

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 6 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 6 of 26

non-jurisdictional. As, under the new law, public disclosure no longer deprives the court of subject matter jurisdiction, it is appropriate to apply the standard of Rule 12(b)(6) to FCA claims that may be subject to the public disclosure rule.

Thus, the Court has divided its analysis into two parts: one addressing claims based on facts prior to the March 23, 2010 amendments ("pre-2010 claims) that fall under the prior version of the statute, and one addressing claims based on facts subsequent to the March 23, 2010 amendments ("post-2010 claims") and therefore subject to the current FCA.[20] For the pre-2010 claims, the Court will begin its analysis under Rule 12(b)(1) and resolve the jurisdictional question before addressing the arguments under Rules 12(b)(6) and 9(b). The Court will evaluate the post-2010 claims under only Rules 12(b)(6) and (9)(b). Accordingly, the motion under Rule 12(b)(1) will be denied for the post-2010 claims.

## II. Pre-2010 Claims.

The First Amended Complaint alleges that Ms. Cohen "has been gathering information and notifying federal authorities concerning the financial abuses set out in this Complaint since January, 2010."[21] Thus, for the claims based on alleged false claims prior to March 23, 2010, "whether we consider the relevant conduct to be [Ms.

---

[20] *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 946 (1997) ("[T]he legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place[.]") (citations omitted). *Landgraf v. USI Film Products* suggests that certain legislative amendments may be applied retroactively, where they merely shift the procedural timeline of an action rather than affect the parties' substantive rights. 511 U.S. 244, 275 (1994) ("Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity."). Here, however, Congress amended not only the jurisdictional language of § 3730, but also the substantive definitions of public disclosure and original source. Thus, the amendment had substantive effects and should not be applied retroactively.

[21] Docket 23 at 2 ¶ 4.

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 7 of 26

Cohen's] disclosure to the Government or [Palmer's] submission of the allegedly false claim[,]" the prior version of the FCA applies.[22]

Palmer's alleged bid-rigging and overpayment of its employees appear to have occurred, at least in part, before the March 23, 2010 amendments to 31 U.S.C. § 3730 took effect.[23] Palmer's alleged failure to create new jobs is a claim that correlates factually with the bid-rigging claim, as it relies on Palmer's failure to submit the projects for competitive bidding. The claim for stockpiling materials appears to post-date the March 23, 2010 FCA amendments and is therefore addressed in the Court's discussion of the post-2010 claims.

Palmer asserts that because the facts alleged in the First Amended Complaint were publicly disclosed, and because Ms. Cohen was not an original source of those facts, the Court lacks subject matter jurisdiction over these claims.

### A. Standard.

Federal Rule of Civil Procedure 12(b)(1) allows a party to seek dismissal of a complaint for lack of subject matter jurisdiction. Challenges to subject matter jurisdiction can take two forms, facial and factual, which the Ninth Circuit has explained as follows:

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[24]

---

[22] *See Hughes Aircraft*, 520 U.S. at 951.

[23] Docket 23 at 7 ¶ 15 (Davis-Bacon wage payments "persisted . . . until December, 2009"; excessive compensation "persisted in 2010 and 2011").

[24] *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 8 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 8 of 26

The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a motion to dismiss under Rule 12(b)(1).[25] "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."[26]

Here, Palmer has presented a factual challenge to the Court's subject matter jurisdiction. When ruling on a factual attack presented in a motion to dismiss under Rule 12(b)(1), the Court may consider material outside the pleadings.[27]

### B. Public Disclosure.

The prior version of 31 U.S.C. § 3730(e)(4) provides:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

---

[25] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989)).

[26] *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

[27] *Assn. of Am. Med. Colleges v. U.S.*, 217 F.3d 770, 778 (9th Cir. 2000) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)); *Wolfe*, 392 F.3d at 362 (quoting *Meyer*, 373 F.3d at 1039).

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 9 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 9 of 26

In *A-1 Ambulance Service, Inc. v. California*, the Ninth Circuit explained that this provision "sets up a two-tiered inquiry."[28]  First, a court "must determine whether there has been a prior 'public disclosure' of the 'allegations or transactions' underlying the *qui tam* suit."[29]  If there has been such a disclosure, a court "next must inquire whether the relator is an 'original source' within the meaning of § 3730(e)(4)(B)."[30]

    *i.  Public Disclosure.*

"The public disclosure question, in turn, requires that [a court] make two distinct but related determinations.  First, [it] must decide whether the public disclosure originated in one of the sources enumerated in the statute."[31]  If so, the court "must then determine whether the content of the disclosure consisted of the 'allegations or transactions' giving rise to the relator's claim, as opposed to 'mere information.'"

    *(a) Enumerated Sources.*

The First Amended Complaint alleges that Ms. Cohen "has been gathering information and notifying federal authorities concerning the financial abuses set out in this Complaint since January, 2010[.]"[32]  In an affidavit submitted with her opposition, Ms. Cohen goes into more detail, explaining her reliance on the responses to the public

---

[28] *A-1 Ambul. Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000).

[29] *Id.* (citing *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir. 1999)).

[30] *Id.*

[31] *Id.*

[32] Docket 23 at 2 ¶ 4.

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 10 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 10 of 26

records requests she had received from Palmer.[33]  Ms. Cohen also clearly relied on ARRA itself as a source of authority.[34]

Palmer asserts that "[t]he public disclosures that operate in this case to bar the relator's claims include news media articles" and the responses to Ms. Cohen's public records requests, which it maintains are administrative reports.[35]

### (1) The Frontiersman Articles.

Palmer references and attaches as exhibits several news articles from *The Frontiersman*, a newspaper of general circulation in the region where Palmer is located.[36]  Pursuant to 31 U.S.C. § 3730(e)(4)(A), "the news media" is an enumerated source under the statute.

### (2) Public Records Requests.

Palmer also asserts that the responses to Ms. Cohen's public records requests "are administrative reports that qualify as public disclosures under the FCA."[37]  31

---

[33] Docket 28-3 at 8 (section entitled "The Role of Public Records Requests") ("In time, I was able to obtain direct proof of the payment of excessive wages to Palmer city workers . . . and confirmed that Palmer obtained no EPA permission to direct the federal grant work to its own public works department.").  The representations of counsel in Ms. Cohen's opposition brief acknowledge this as well.  Docket 28 at 6 ("Reading through hundreds of documents produced at Cohen's request under the Alaska Public Records Act by Palmer and the Alaska Department of Environmental Conservation (ADEC), Cohen discovered the source documents proving Palmer's violation of the ARRA mandate for private-sector bidding of construction contracts. She also found the source documents of the excessive compensation of Palmer employees[.]").

[34] *E.g.*, Docket 23 at 2 ¶ 3 (citing ARRA § 1554).

[35] Docket 27 at 9.

[36] Docket 27 at 10-14.

[37] Docket 27 at 14 (citing *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 131 S.Ct. 1885 (2001); *Graham Cnty. Soil and Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 293 (2010)).

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 11 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 11 of 26

U.S.C. § 3730(e)(4)(A) includes "a congressional, administrative, or Government Accounting Office report" in its list of enumerated sources. Therefore, if the responses to Ms. Cohen's public records requests qualify as administrative reports, they are enumerated sources under the statute.

As noted above, Ms. Cohen has acknowledged that she "found the source documents" for the bid-rigging and Davis-Bacon wage claims through her public records request.[38] But she disagrees with Palmer's application of the statute, arguing that Palmer is presenting "an expanded view of what constitutes an 'administrative report' as a public disclosure for FCA purposes."[39]

Both parties discuss *Schindler Elevator Corp. v. United States ex rel. Kirk*.[40] In that case, a former employee of Schindler filed an FCA action based on documents received from the government pursuant to a Freedom of Information Act ("FOIA") request. The district court determined that the public disclosure rule barred suit, in part because the documents constituted an administrative report or investigation under § 3730(e)(4)(A). The Second Circuit vacated and remanded, and the Supreme Court reversed the Second Circuit's decision. The Supreme Court held that the "written FOIA responses . . . along with their attached records, are thus reports within the meaning of the public disclosure bar."[41] The Court explained that "[e]ach response was an 'official

---

[38] Docket 28 at 6.

[39] Docket 28 at 11.

[40] 131 S.Ct. 1885.

[41] *Id.*

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 12 of 26

or formal statement' that '[gave] information' and 'notif[ied]' [the requestor] of the agency's resolution of [the] FOIA request."[42]

Here, Ms. Cohen's affidavit indicates that she made several public records requests and received several responses, not all of which are in the record.[43] However, one request and Palmer's response to that request have been filed. In a letter dated September 22, 2009 and addressed to the Palmer City Manager, Ms. Cohen requested "written documentation which you must have received from the Federal Government as well as the State of Alaska which documents / authorizes / requires that the city of Palmer [] pay city employees Davis Bacon Wages for this project" as well as "the name of those department(s) involved, the name(s) of those individuals who are requiring the implementation of Davis B[acon] Wages as it relates to this project and their work phone number(s).[44] By letter dated October 1, 2009, the City Manager replied.[45] In that response, he acknowledged Ms. Cohen's request; identified the documents he had enclosed in response to the request; and explained that Palmer had already "reviewed this matter with federal and state agencies[.]"[46]

Although the Supreme Court's holding in *Schindler* specifically addressed FOIA requests made to the federal government, its analysis was conducted in more general

---

[42] *Id.*

[43] Docket 28-3 at 7.

[44] Docket 26-2 at 20.

[45] Docket 26-2 at 17.

[46] Docket 26-2 at 17. Alaska has a statute giving individuals "a right to inspect a public record in the state" and placing on public officers an obligation to permit the inspection and provide certified copies. AS § 40.25.120(a)-(b).

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 13 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 13 of 26

terms and does not rely in any way on the federal nature of the responding entity; thus, the Court finds it applicable here, where the information request was made to a local government. The City Manager's response appears to be an "'official or formal statement' that '[gave] information' and 'notif[ied]' [Ms. Cohen] of the agency's resolution of her . . . request." Under *Schindler*, then, the Court finds, for purposes of this motion, that the City Manager's response to Ms. Cohen's information request was a "report" under the meaning of the statute and therefore satisfies the first step of the public disclosure analysis.[47]

To the extent that the responses to Ms. Cohen's other public records requests may differ from the one addressed here in such a way as to render *Schindler* inapplicable to them, it would have been Ms. Cohen's burden, as the plaintiff, to demonstrate this. But as the responses are not in the record, the Court did not consider them.

>    *(3) ARRA.*

ARRA, as a legislative act of Congress, qualifies as a congressional report and therefore is an enumerated source under 31 U.S.C. § 3730(e)(4)(A).

>    *(b) Allegations or Transactions.*

---

[47] In her opposition, Ms. Cohen makes a policy argument against counting public records requests to qualify as publicly disclosed reports. She maintains that "When it comes to smaller FCA suits, like this one, seldom pursued in tandem with the Justice Department, there would, in effect, be no public liability under the FCA . . . so long as the wrongdoing government complied with public record requests on the subject . . . even if the request was a sham seeking a fig leaf of official immunity." However, in *Schindler*, the Supreme Court expressly rejected this approach, stating that "the notion that potential defendants will make FOIA requests to insulate themselves from liability is pure speculation. . . There is no suggestion that this has occurred in those Circuits that have long held that FOIA responses are 'reports' within the meaning of the public disclosure bar." *Schindler*, 131 S. Ct. at 1895.

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 14 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 14 of 26

The Court next considers "whether the content of the disclosure consisted of the 'allegations or transactions' giving rise to the relators' claim, as opposed to 'mere information.'"[48]  To satisfy this step, "the substance of the disclosure need not contain an explicit 'allegation' of fraud; the jurisdictional bar is raised so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain."[49] In analyzing the disclosure, a court "must determine whether there was a public disclosure of fraud which was 'substantially similar to those disclosed in the earlier ... action.'"[50]  "[T]he elements of the fraud allegation need not have been made public in a single document."[51]  The Ninth Circuit has adopted the following analysis from the District of Columbia Circuit:

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements.  In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the conclusion that fraud has been committed.[52]

In this formulation, "X and Y inevitably stand for but two elements: 'a misrepresented

---

[48] *U.S. ex rel. Found. Aiding The Elderly v. Horizon W.*, 265 F.3d 1011, 1014 (9th Cir. 2001), *opinion amended to correct clerical errors on denial of reh'g sub nom. U.S. ex rel. Found. Aiding Elderly v. Horizon W., Inc.*, 275 F.3d 1189 (9th Cir. 2001)

[49] *A-1 Ambul.*, 202 F.3d at 1243 (9th Cir. 2000) (citing *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1473 (9th Cir.1996)).

[50] *Horizon*, 265 F.3d at 1015 (9th Cir. 2001) (quoting *U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 162 F.3d 1027, 1033 (9th Cir.1998)).

[51] *U.S. v. Catholic Healthcare W.*, 445 F.3d 1147, 1151 n.1 (9th Cir. 2006) (citing *Horizon*, 265 F.3d 1011; *A-1 Ambul.*, 202 F.3d 1238.

[52] *Horizon*, 265 F.3d at 1015 (quoting *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)).

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 15 of 26

state of facts and a true state of facts.'"[53]  The Court evaluates each of the pre-2010

claims in turn below.

    *i.    Bid-Rigging.*

Palmer asserts that the *Frontiersman* articles "contain all the operative facts on

which the Relator bases her allegations that the City . . . unlawfully used its own

employees on a force account basis to perform work under the 2009 ARRA (stimulus)

grants that should have been competitively bid[.]"[54]  The Court has reviewed the articles

and has found them to contain the following references to the source of the funds used

in the city repairs:

- "[The Palmer public works director] said state grants from the Alaska Department of Environmental Conservation to upgrade the water system in Palmer have already been secured, it's an ongoing project with money coming in yearly installments. . . This year's installment of grant money he said hasn't arrived yet but he can set his crews to work, knowing that the money is on its way."[55]

- "[The Palmer public works director] said the decision was made to do the job in-house, rather than through a contractor as is the case with most of the other pipe replacement mostly because it needed to get done immediately."[56]

- "As to the funding for the emergency repairs, [the public works director] said the city is paying for about 30 percent of the costs and programs [though] the state will pay the remaining 70 percent."[57]

- Included in a list of federal grant funds allocated to the region: "$2.5 million to the city of Palmer to replace steel water mains to ensure clean drinking water.  The grant comes from the Alaska Department of Environmental Conservation funded

---

[53] *Id.*

[54] Docket 27 at 13.

[55] Docket 26-1 at 1 ("Work under way on Palmer water main break") (June 18, 2009).

[56] Docket 26-1 at 3 ("Water pipe problems continue in Palmer") (June 28, 2009).

[57] Docket 26-1 at 4 ("More water main problems in Palmer") (July 14, 2009).

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 16 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 16 of 26

by the EPA. . . $2.5 million for Palmer to upgrade its wastewater treatment facility. Again, this comes from the ADEC funded by the EPA."[58]

- "The city was able to use funding from the state for 70 percent of this phase one project. . . While finishing up phase two, the city started purs[u]ing grant money through the American Recovery and Reinvestment Act. . . .[The Palmer public works director] said the city has received its first check from stimulus money and another is on the way. The city will be reimbursed for almost the entire cost, he said."[59]

These articles disclose X—the true state of facts that Palmer used its own workforce to repair the water main using federal funds. But they do not contain the equally crucial Y—allegations that this was contrary to Palmer's obligations under ARRA to engage in competitive bidding for the projects.[60]

However, ARRA § 1554 is the legal authority on which Ms. Cohen relies for this claim. It provides:

> To the maximum extent possible, contracts funded under this Act shall be awarded as fixed-price contracts through the use of competitive procedures. A summary of any contract awarded with such funds that is not fixed-price and not awarded using competitive procedures shall be posted in a special section of the website established in section 1526.[61]

In addition, as discussed above, Ms. Cohen has provided the Court her own affidavit outlining her reliance on the responses to her public records requests, which "confirmed that Palmer obtained no EPA permission to direct the federal grant work to its own

---

[58] Docket 26-1 at 5-6 ("Valley projects get close to $40 million") (Aug. 1, 2009).

[59] Docket 26-1 at 8 ("Emergency projects keep city out of hot water") (Nov. 22, 2009).

[60] *Horizon*, 265 F.3d at 1015 ("Indeed, at most, these allegations only disclose the true set of facts, *viz.*, that the facility in question provided substandard care. What is conspicuously missing from that complaint are any allegations that the named defendants misrepresented the level of care to the government and received payment for that alleged substandard care.").

[61] ARRA § 1554.

public works department."[62]  Thus, Palmer's alleged noncompliance with its ARRA obligations was publicly revealed.

Accordingly, the Court finds that the allegations or transactions forming the basis of the First Amended Complaint's bid-rigging claim were publicly disclosed under the meaning of § 3730.

    ii.    *Excessive Employee Compensation (Davis-Bacon Wages).*

Palmer asserts that the "responses to the Relator's public records requests in September and October 2009 . . . indicated not only that the City had paid its employees Davis-Bacon wages, but that it had received information from the DEC and the DOL that such wages were not required[.]"[63]  Palmer further asserts that "[t]he portions of the First Amended Complaint pertaining to the alleged impropriety of payment of Davis-Bacon level wages and benefits to City employees are based upon the information contained in those responses."[64]

Ms. Cohen asserts that she "learned nothing new . . . by receiving [the] City Manager['s] terse PPR reply."[65]  She appears to be referring to the letter itself, exclusive of the attached records responsive to her request.  However, in *Schindler*, the Supreme Court held that "[a]ny records the agency produces along with its written . . . response are part of that response," and that "[n]othing in the public disclosure bar suggests that

---

[62] *Supra* at 11 and n. 33

[63] Docket 27 at 16.

[64] Docket 27 at 17.

[65] Docket 28 at 8.

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 18 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 18 of 26

a document and its attachments must be disaggregated and evaluated individually."[66] Ms. Cohen has not asserted or demonstrated that the records she received through her request were not the source of the Davis-Bacon wage allegations in the First Amendment Complaint. To the contrary, in her affidavit, in a section entitled "The Role of Public Records Requests," Ms. Cohen testified that through her requests, she was "able to obtain direct proof of the payment of excessive wages to Palmer city workers . . . and confirmed that Palmer obtained no EPA permission to direct the federal grant work to its own public works department."[67] In that same section, she also testified that at her request, a city employee produced documents relating to the payment of Davis-Bacon wages to Palmer employees.[68]

Thus, the Court finds that the allegations or transactions on which the Davis-Bacon wage claim in the First Amended Complaint is based were publicly disclosed under the meaning of § 3730.[69]

### C. Original Source.

Because the Court has determined that the allegations or transactions forming the bases of the bid-rigging and Davis-Bacon wage claims were publicly disclosed, it must next analyze whether Ms. Cohen was an original source of that information. The prior version of 31 U.S.C. § 3730(e)(4) defines original source as "an individual who has

---

[66] *Schindler*, 131 S. Ct. at 1893.

[67] Docket 28-3 at 8.

[68] Docket 28-3 at 10.

[69] Moreover, in her opposition, Ms. Cohen makes a statement that indicates that the Davis-Bacon wage issue was known to the public: "The D-B wages controversy had already played out with Palmer city management in open detail . . . even before the local Frontiersman newspaper ran a story about the Palmer federal grant awards." Docket 28 at 6.

direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." Here, there is no question that Ms. Cohen voluntarily provided information to the Government before filing this action. However, the record does not indicate that she had "direct and independent knowledge" of that information and, as noted above, Ms. Cohen bears the burden of demonstrating the existence of subject matter jurisdiction.

The Ninth Circuit has held that "[t]o show direct knowledge, 'the relator must show that he had firsthand knowledge of the alleged fraud, and that he obtained this knowledge through his own labor unmediated by anything else.' . . . A relator has independent knowledge when he knows about the allegations before that information is publicly disclosed."[70] Even assuming, for purposes of this analysis, that Ms. Cohen had shown she gained firsthand knowledge of the alleged fraud through her own efforts, she has not demonstrated that she knew about the allegations forming the basis of the bid-rigging and Davis-Bacon wage claims before receiving the responses to her public records requests, i.e., before the information was publicly disclosed. To the contrary, as noted above, the record indicates that Ms. Cohen gained her knowledge *through* the public disclosures. Accordingly, the Court finds that Ms. Cohen did not have the requisite independent knowledge of the allegations and therefore was not an original source under the meaning of § 3730. For that reason, the Court finds that the First

---

[70] *U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1202 (9th Cir. 2009) (quoting *U.S. v. Alcan Elec. and Engr., Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999)).

Amended Complaint's pre-March 23, 2010 claims for bid-rigging and payment of Davis-Bacon wages are jurisdictionally barred.

Further, as noted above, Palmer's alleged failure to create new jobs is a corollary to and is based on the same facts as the bid-rigging claim; accordingly, the First Amended Complaint's pre-March 23, 2013 claim for failure to create new jobs is jurisdictionally barred as well.

## III. Post-2010 Claims.

The Court next addresses the remaining claims in the First Amended Complaint, as they appear to be based on facts occurring after March 23, 2010. The post-2010 claims include bid-rigging, stockpiling, and failure to create new jobs. Palmer asserts that the First Amended Complaint fails to state a claim under Rule 12(b)(6) and does not meet the heightened pleading standard of Rule 9(b), which requires that fraud be alleged with particularity.[71]

### A. Jurisdiction.

The Court has subject matter jurisdiction over the post-2010 claims under 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).[72]

### B. Standard.

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

---

[71] Docket 27 at 3.

[72] *See discussion supra* at 6-7.

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 21 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 21 of 26

This heightened pleading standard governs FCA claims.[73]  "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'"[74]  To survive a motion to dismiss under Rule 9(b), the pleading must also pass muster under Rule 12(b)(6).  Thus, "claims of fraud or mistake—including FCA claims—must, in addition to pleading with particularity, also plead plausible allegations.  That is, the pleading must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"[75]  In evaluating a motion under Rule 9(b), the Court thus looks at the face of the complaint and accepts the facts plausibly alleged as true.  Where a complaint is deficient, leave to amend should be freely granted, unless it is clear that amendment would be futile.[76]

### C. Discussion.[77]

31 U.S.C. § 3729 lists the circumstances that can give rise to liability under the

---

[73] *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011) (citing *Bly–Magee v. California*, 236 F.3d 1014, 1018 (9th Cir.2001)).

[74] *Id.* at 1055 (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

[75] *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[76] *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038-39 (9th Cir. 2002) (citations omitted).

[77] The original Complaint in this action incorporated several documents as attachments.  The First Amended Complaint—which superseded the original Complaint in its entirety—references, but neglected to incorporate, those documents.  An amended complaint supersedes an original complaint; after amendment, the Court treats the original Complaint as nonexistent.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  However, as the documents are in the record and are clearly referenced in the First Amended Complaint, the Court has considered them in deciding this motion.

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 22 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 22 of 26

FCA. Those circumstances include when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]"[78] Normally, "a palpably false statement, known to be a lie when it is made, is required for a party to be found liable under the False Claims Act."[79] The First Amended Complaint does not make particularized, plausible allegations that Palmer knowingly made "palpably false statements" to the federal government regarding its use of grant funds after March 23, 2010. However, the Ninth Circuit has held that a plaintiff may bring an FCA claim under a theory of implied false certification.[80] To survive a Rule 9(b) motion to dismiss, a false certification claim must plausibly allege "(1) the defendant explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though the defendant was not in compliance with that law, rule or regulation."[81] The Court thus evaluates the allegations in the First Amended Complaint to determine if it plausibly alleges "the who, what, when, where, and how" of these three elements.[82]

The Court finds that the First Amended Complaint fails to plausibly allege facts to support these three elements. The Court assumes, for purposes of this motion, that the First Amended Complaint adequately alleges facts to support the first element (i.e., that

---

[78] 31 U.S.C. § 3729(a)(1)(A)-(B).

[79] *U.S. ex rel. Hendow v. U. of Phoenix*, 461 F.3d 1166, 1172 (9th Cir. 2006) (citing *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996)).

[80] *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010).

[81] *Id.* at 998.

[82] *Cafasso,* 637 F.3d at 1055.

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 23 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 23 of 26

Palmer undertook compliance with rules, regulations, or even contractual obligations that required it to competitively bid out the public works construction projects, create new jobs, and use grant funds to purchase only materials within the limits of the projects' scope). However, even under this assumption, the First Amended Complaint fails to allege facts to support elements two and three.

Regarding the second element, the First Amended Complaint fails to identify a specific claim or claims that Palmer submitted. It alleges that "Palmer wrongfully expended the total sum of approximately $847,900 in unauthorized force account work under the EPA ARRA grant for the city water main replacement[,]"[83] "Palmer wrongfully expended the sum of $418,500 in no-bid, force account work under the ARRA grant for the city waste water treatment facility[,]"[84] and that "[a]ll of the misspent funds were lumped into the largest reporting category one can imagine for such a project, 'construction costs.'"[85] While the First Amended Complaint makes a single unexplained reference to "thirteen reports under ARRA,"[86] it does not make any particularized allegations regarding "the who, what, when, where, and how" of Palmer's submission of these reports.[87]

Regarding the third element, the First Amended Complaint fails to allege with particularity that Palmer was in non-compliance with the obligations it had undertaken

---

[83] Docket 23 at 10 ¶ 23.

[84] Docket 23 at 10 ¶ 24.

[85] Docket 23 at 9 ¶ 20(f).

[86] Docket 23 at 9 ¶ 20(f).

[87] *Cafasso,* 637 F.3d at 1055.

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 24 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 24 of 26

within a specified time period.[88]  The First Amended Complaint is noticeably lacking in a distinct chronology.  It contains no allegations as to when in 2009 or 2010 the two public works construction projects took place, when Palmer allegedly began paying its own employees with ARRA funds, or when it ordered the allegedly excessive materials.  Thus, the Court finds that the First Amended Complaint does not allege with particularity that Palmer was in noncompliance within a specified time period.[89]

This lack of a clear chronology and failure to allege the specific dates of Palmer's alleged non-compliance is especially crucial in light of the March 23, 2010 change in law.  If this case proceeds, it will be essential to know exactly which claims are being alleged for which time period.[90]  In addition, given that public disclosure may now be an appropriate basis for a motion to dismiss under Rule 12(b)(6) for post-March 23, 2010 claims, Ms. Cohen should address the public disclosure rule in any amended complaint she may file.

---

[88] *E.g.*, Docket 23 at 2 ¶ 3 ("Palmer failed to place the vast majority of its public works construction projects out for competitive bids by the private sector, instead paying Palmer's existing public works force at a sharply enhanced pay rate to largely perform the federally-financed projects, practices that are directly prohibited when spending federal grant funds, all done without consultation with the United States of any form.").

[89] Although these dates are clarified somewhat by the briefing on and attachments to the motion to dismiss, the Court may not consider materials outside the pleadings in its Rule 12(b)(6) and Rule 9 analysis.  *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (citations omitted).

[90] *Cf. Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) ("[W]hether [plaintiffs] can state a cause of action as to some of their claims may depend on when the alleged unconstitutional conduct occurred.  No dates are set forth in the first amended complaint.").

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 25 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 25 of 26

Accordingly, the Court finds that the post-2010 claims of the First Amended Complaint do not pass muster under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The post-2010 claims are therefore dismissed with leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss at Docket 26 is GRANTED and the First Amended Complaint is DISMISSED as follows:

1. The claims in the First Amended Complaint based on facts prior to March 23, 2010 are DISMISSED with prejudice for lack of subject matter jurisdiction.

2. The claims in the First Amended Complaint based on facts subsequent to March 23, 2010 are DISMISSED with leave to amend.

3. Plaintiff may file a Second Amended Complaint that remedies the deficiencies identified above within **21 days** of the date of this order. Should she fail to do so, this action may be dismissed without further notice.

DATED at Anchorage, Alaska this 26th day of August, 2013.

*/s/ Sharon L. Gleason*
United States District Judge

3:11-cv-00199-SLG, *U.S. ex rel. Cohen v. City of Palmer*
Order Granting Motion to Dismiss
Page 26 of 26

Case 3:11-cv-00199-SLG   Document 36   Filed 08/26/13   Page 26 of 26